**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KEITH WILLIAM DEBLASIO,
　　　　　　*Plaintiff-Appellant,*

and

KEVIN A. EGGLESTON,
　　　　　　　*Plaintiff,*

v.

JAMES S. GILMORE, III, Governor;
MARK L. EARLEY, Attorney General;
DAVID B. BEACH, Clerk of the
Supreme Court of Virginia; RON
ANGELONE, Director, Virginia
Department of Corrections; W. P.
ROGERS, Regional Director, Virginia
Department of Corrections; C. D.
LARSEN, Warden, Lunenburg
Correctional Center; GARY GRAHAM,
Operations Officer, Lunenburg
Correctional Center; KATHLEEN
HAWK, Director, Federal Bureau of
Prisons,
　　　　　*Defendants-Appellees.*

No. 01-7025

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-1301-AM)

Argued: October 28, 2002

Decided: January 7, 2003

Before NIEMEYER, Circuit Judge,
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation,
and Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

---

Vacated and remanded by published opinion. Judge Goodwin wrote
the opinion, in which Judge Niemeyer and Judge Davis joined.

---

## COUNSEL

**ARGUED:** Neal Lawrence Walters, UNIVERSITY OF VIRGINIA
SCHOOL OF LAW APPELLATE LITIGATION CLINIC, Char-
lottesville, Virginia, for Appellant. Pamela Anne Sargent, Senior
Assistant Attorney General, Criminal Law Division, OFFICE OF
THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.
**ON BRIEF:** Kendal A. Sibley, Third Year Law Student, UNIVER-
SITY OF VIRGINIA SCHOOL OF LAW APPELLATE LITIGA-
TION CLINIC, Charlottesville, Virginia, for Appellant. Jerry W.
Kilgore, Attorney General, Criminal Law Division, OFFICE OF THE
ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

---

## OPINION

GOODWIN, District Judge:

The question before the court is whether, pursuant to the Prison
Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, §§ 801-
10, 110 Stat. 1321 (1996), an indigent plaintiff who files an action
while in prison must pay the entire filing fee upon release in order to
continue his lawsuit. We hold that the PLRA fee requirements are not
applicable to a released prisoner (assuming the prisoner made any
required payments while in prison) and that his obligation to pay fil-
ing fees is determined by evaluating whether he qualifies under the
general in forma pauperis provision of 28 U.S.C. § 1915(a)(1).

## I.

On August 1, 2000, Keith William DeBlasio, then a prisoner, filed a civil action pursuant to 42 U.S.C. § 1983 challenging the Commonwealth of Virginia's refusal to pay for prisoners' certified or registered "legal mail."[1] With his complaint, DeBlasio filed an application for leave to proceed in forma pauperis (IFP). The district court filed the complaint and sent a consent form to DeBlasio regarding his IFP application. The consent form noted that DeBlasio would be required to pay a filing fee of $150, but stated that if the court granted IFP status, DeBlasio could pay the fee in installments. The form further indicated that DeBlasio could make the payments from his "inmate account." DeBlasio signed the consent form, and the district court directed DeBlasio to pay $11.37 as the initial portion of his filing fee. DeBlasio paid $12 to the court on December 18, 2000, which more than satisfied the installment fee set by the district court.

On February 15, 2001, DeBlasio sent the district court a change of address notification and informed the court that he would be released from prison on February 21, 2001. On March 22, 2001, the district court issued an order stating that because DeBlasio was no longer in custody, he was not eligible for IFP status under 28 U.S.C. § 1915. The court directed DeBlasio to pay the remaining $138 filing fee within thirty days, although it afforded DeBlasio an opportunity to offer proof of any special circumstances that would warrant excusing the payment. On April 23, 2001, DeBlasio moved for permission to continue in forma pauperis, alleging that he had insufficient assets to pay the remaining balance. The district court entered a second order on May 16, 2001, dismissing the action without prejudice for failure to pay the remaining balance within thirty days. Without considering DeBlasio's ability to pay, the court reiterated its view that one released from prison cannot continue to proceed in forma pauperis. DeBlasio timely appealed and submitted an affidavit supporting his request to proceed in this court in forma pauperis. We grant DeBlasio's request to appeal in forma pauperis. In granting this motion, we note that the determination as to his ability to pay the filing fee on

---

[1]Keith A. Eggleston was a co-plaintiff in the initial complaint. Eggleston filed a motion for voluntary dismissal from this action on December 18, 2000. The district court granted this motion on January 17, 2000.

appeal is a separate issue from his ability to pay the filing fee for a
civil action.

## II.

Federal courts have statutory power under 28 U.S.C. § 1915 to
authorize commencement of civil actions in forma pauperis. Section
1915 is intended to allow qualified litigants to proceed without having
to advance the fees and costs associated with litigation. *Flint v.
Haynes*, 651 F.2d 970, 972 (4th Cir. 1981). An indigent litigant seek-
ing to proceed IFP must file an affidavit that includes statements of
that person's assets and his inability to pay fees. *See* 28 U.S.C.
§ 1915(a)(1). If the court grants the motion to proceed IFP, the litigant
is excused from prepayment of filing fees. *Id.* In addition, the court
may direct the United States to pay expenses associated with printing
records and transcripts, and may order court officers to carry out
duties associated with service of process. *Id.* §§ 1915(c) & (d).

The process for prisoners attempting to proceed IFP, however, is
somewhat different. Under section 1915(b)(1), if a prisoner brings a
civil action or files an appeal in forma pauperis, the prisoner, in con-
trast to the average indigent litigant, is not excused from prepaying
the filing fee. *Id.* § 1915(b)(1).[2] Instead, the statute establishes a pay-
ment scheme for prisoners, dictating that the prisoner make an initial
partial payment from funds in his inmate's account, and that he make
subsequent installment payments of twenty percent of his preceding
month's income. *Id.* § 1915(b)(2).[3] This additional requirement for

---

[2]Section § 1915(b)(1) provides:

> The court shall assess and, when funds exist collect, as a partial
> payment of any court fees required by law, an initial partial filing
> fee of 20 percent of the greater of —
>
> (A) the average monthly deposits to the prisoner's account; or
>
> (B) the average monthly balance in the prisoner's account for the
> 6-month period immediately preceding the filing of the com-
> plaint or notice of appeal.

[3]Section § 1915(b)(2) provides:

> After payment of the initial partial filing fee, the prisoner shall
> be required to make monthly payments of 20 percent of the pre-

prisoners came in response to congressional concern that too many prisoners were filing frivolous or repetitive lawsuits. *See Roller v. Gunn*, 107 F.3d 227, 229 (4th Cir. 1997) (stating that the PLRA "represents a legitimate exercise of Congress' power to reduce frivolous lawsuits in federal courts").

In the case at hand, the district court assessed the initial partial filing fee ($11.37) required by § 1915(b)(1), and DeBlasio paid that fee while an inmate. DeBlasio was released from prison before any subsequent installments became due. After his release, of course, he had no "prisoner's account" from which to deduct the remaining payments. Section 1915(b)(2) provides no method of remitting payments other than by deduction from a prisoner's account, and thus it does not shed any light on how payments should be paid once that prisoner is released.

Several other circuit courts have considered the question before this court and have all come to the same conclusion, albeit for different reasons. *See, e.g., Gay v. Tex. Dept. of Corr.*, 117 F.3d 240 (5th Cir. 1997); *In re Smith*, 114 F.3d 1247 (D.C. Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997); *Robbins v. Switzer*, 104 F.3d 895 (7th Cir. 1997); *McGann v. Comm'r, Soc. Sec. Admin.*, 96 F.3d 28 (2d Cir. 1996). These cases hold that a prisoner who is current on his payments and who is released before paying the entire filing fee does not have to pay the remaining balance immediately. Rather, these courts have allowed a released prisoner to apply to proceed under the general in forma pauperis provisions of § 1915(a)(1).

We find the Second Circuit's reasoning in *McGann* persuasive. The *McGann* court found a conflict between § 1915(b)(1) and § 1915(b)(2) because there is no available inmate account from which to deduct payments once the litigant is released from prison. *McGann*, 96 F.3d at 29-30. The Second Circuit stated that the issue could be resolved in two different ways:

> ceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

> The PLRA could be construed to mean that once a prisoner files a complaint or appeal, he becomes liable for the full amount of filing fees, and, if released, must then pay the entire remaining amount of those fees or have his complaint or appeal dismissed. Alternatively, the PLRA could be construed to mean that the required partial fee payments are to be made only while the prisoner remains in prison, and that, upon his release, his obligation to pay the fees is to be determined, like any non-prisoner, solely by whether he qualifies for IFP status.

*Id.* at 30. The Second Circuit reasoned that the second construction better conforms to the overall structure of the PLRA because it is not likely that Congress intended to achieve a result that would be more onerous to released prisoners than to those who remain incarcerated. *Id.* Thus, the Second Circuit held that a released prisoner may proceed in forma pauperis upon satisfying the poverty provisions applicable to non-prisoners. *Id.* We agree.

A released prisoner should not have to shoulder a more difficult financial burden than the average indigent plaintiff in order to continue his lawsuit. While preventing frivolous lawsuits is a legitimate reason for requiring prisoners to overcome additional financial hurdles when filing suits, the same rationale does not dictate that recently-released prisoners become instantly liable for the remaining filing fee balance simply because they have been released. The district court's decision to deny DeBlasio's IFP status without considering his financial circumstances was error. We vacate the dismissal and remand to the district court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*